[Crim. No. 255. Fifth Dist. Nov. 14, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RAMON SALCIDO, Defendant and Appellant.

452

William B. Johnston, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General; Raymond M. Momboisse and Theodore T. N. Slocum, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Defendant appeals from a judgment of conviction, after a jury verdict of murder in the first degree.

Appellant, an itinerant farm worker who apparently had a wife in Arizona, had been living with Cruz Almeras, a 19-year-old girl, for approximately six months prior to her death. On November 13, 1963, appellant and Cruz, along with two friends, Jesus Guerrero and Carlotta Castenada, were driving in appellant's automobile from Firebaugh to Delhi to work in the vineyards. At the commencement of the journey appellant was driving, but before they reached Dos Palos Guerrero replaced him as the driver, with Carlotta seated in the front seat. Cruz sat behind the driver and appellant sat behind Carlotta. Shortly after the change of drivers Cruz and appellant began to argue about "his woman" in Arizona. When Cruz threatened to jump out of the automobile it came to a stop and all four persons descended. Cruz, Guerrero and Carlotta refused to get back in the car so appellant produced a revolver and threatened to kill them. After the appellant fired two shots, all four persons reentered the automobile and the journey was resumed with each person seated in the same spot he or she had occupied prior to the interruption. During this part of the ride the appellant on three occasions threatened to kill Cruz. Upon hearing the threats Carlotta turned and looked to the back seat, and she saw appellant pointing a gun at the center of Cruz's chest. Appellant lowered the gun at Carlot-

ta's request. Shortly after Carlotta turned to face the front of the car a shot was fired and when she looked back she saw appellant holding the gun which he later wiped clean with a handkerchief. Cruz was taken to a hospital for emergency treatment, where she ultimately died of a gunshot wound.

The appellant presents two main contentions for reversal: that during the trial errors in law occurred which resulted in a miscarriage of justice, and that there was insufficient evidence to justify the verdict of murder in the first degree.

We will deal first with the alleged errors. These errors, although not necessarily in the order presented by appellant in his brief, are substantially as follows:

1. That appellant's statements to Agent Tickvitza and Lieutenant Bowling were improperly admitted into evidence.

2. That the court erred in refusing to give defendant's proffered instruction on homicide by accident and misfortune.

3. That evidence of previous suicide attempts by Cruz was improperly excluded; and

4. That the ambulance driver's testimony that Cruz shot herself was admitted into evidence, but the court improperly limited its admission as a dying declaration and instructed the jury accordingly.

(1) We do not agree with appellant's contention that the trial court erred when it admitted into evidence statements made by the appellant at the Merced County jail on November 16th, approximately two days after the shooting, to Special Agent Andrew Tickvitza of the State Department of Justice, and to Lieutenant Jess Bowling of the Merced sheriff's office. In these statements the defendant told two different versions of the shooting, admitted he was lying about the first version, was inconsistent and equivocal, and finally admitted that he did the shooting.

There is no doubt that the investigation had focused on the appellant when his statements were taken by Agent Tickvitza and Lieutenant Bowling, and that they stem from custodial interrogation. (*People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) Appellant's counsel, however, does not and cannot contend that the admonitions given to the appellant prior to the taking of these statements fail to meet the minimum requirements of *Dorado*. The record is abundantly clear that he was advised of his right to counsel and of his right to remain silent, and he was informed that anything he said could be used against him. Counsel quotes at great length from the recent United States Supreme Court decision of *Mi-*

*randa* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], and apparently asserts *inter alia* that the appellant had not intelligently and knowingly waived his constitutional rights before making his statements.

It is apparent that the admonitions given to the appellant by Lieutenant Bowling and Agent Tickvitza do not meet the minimum requirements of *Miranda.* We do not, however, reverse on this ground for appellant's trial was concluded on January 6, 1966, and the United States Supreme Court in *Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772] held that the rules laid down in *Miranda* are not retroactive and are available only to one whose trial had not begun as of June 23, 1966. (See *People* v. *Lewis,* 244 Cal.App.2d 325 [53 Cal.Rptr. 108].) The remaining question, therefore, is whether there is sufficient evidence in the record to support the trial court's finding that the defendant intelligently and knowingly waived his constitutional rights, bearing in mind that conflicts in the evidence relating to this issue are predominantly questions for the trial court to resolve, and that its determination will not be disturbed on appeal unless it is "palpably erroneous." (*People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598].)

It is now well settled that the prosecution has the burden of showing that a defendant has knowingly and intelligently waived his rights to counsel and to remain silent, and that such a waiver will not be presumed from a silent record. (*People* v. *Furnish,* 63 Cal.2d 511 [47 Cal.Rptr. 387, 407 P.2d 299] (U.S. cert. den.); *People* v. *Lilliock,* 62 Cal.2d 618 [43 Cal.Rptr. 699, 401 P.2d 4].) As a matter of fact, our own Supreme Court decisions dealing with this subject are already substantially in harmony with the language of *Miranda,* which was taken from *Carnley* v. *Cochran,* 369 U.S. 506 [8 L.Ed. 2d 70, 82 S.Ct. 884]. (*In re Johnson,* 62 Cal.2d 325 [42 Cal. Rptr. 228, 398 P.2d 420]; *In re Woods,* 64 Cal.2d 3 [48 Cal. Rptr. 689, 409 P.2d 913]; *People* v. *Brooks,* 64 Cal.2d 130 [48 Cal.Rptr. 879, 410 P.2d 383].) In *Carnley,* at page 516 of the opinion, the following language appears: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver."

We do not believe, as appellant apparently contends, that the cases hold that the defendant must expressly state that he does not wish to be represented by counsel before a waiver can occur. They simply hold that a silent record is

insufficient. They also indicate that the mere silence of the defendant, after he has been advised of his rights, as an isolated fact, is not a waiver. This is not the equivalent of saying that under proper circumstances the trial court may not find a waiver notwithstanding the defendant's silence.

In *Carnley*, from which the language used in *Miranda* sprang, the Supreme Court overruled the earlier concept that "if the record shows defendant did not have counsel it will be presumed that defendant waived counsel." There, the defendant was not represented by counsel during trial, and the record did not show that he had been offered and refused counsel.

Significantly, the court in *Woods*, after holding that the records of the Nebraska and Utah convictions were inadequate to show waiver, had this to say: "It is clear, however, that the matter of waiver of constitutional rights is to be determined on the facts of each particular case . . . and that an inflexible exclusive adherence to the strict record is neither constitutionally required nor in the best interests of effective judicial administration."

In *Johnson* the court had given a collective admonition to a large number of defendants in court for arraignment. Later, in the absence of any further admonitions, defendant Johnson was presented to the court for arraignment and he pleaded guilty; and there was no evidence in the record to show that the defendant intelligently understood his rights. The court indicated that to insure the protection of a party's rights in such a situation, the court could "preface the arraignment of each defendant thereafter by asking if that defendant heard and understood the general statement." (*In re Johnson, supra,* at p. 332.)

In *Brooks* there was no evidence in the record to show that the defendant *was offered counsel* but intelligibly and understandably rejected the offer. The court held that anything less is not a waiver.

In the instant case, the record is by no means silent. To the contrary, there is ample evidence to support the trial court's finding that defendant was offered counsel and that the offer was intelligently and knowingly refused. Lieutenant Bowling testified that he informed appellant on two separate occasions that "he did not have to make any statements, anything he said could be used against him in court and he also had a right for an attorney to be present." He further testified that defendant had no language difficulty and that defend-

ant acknowledged that he understood everything that was said. Agent Tickvitza testified that he also informed appellant of his right to counsel, his right to remain silent, and warned him that anything he said might be used against him. He further testified that appellant told him that he understood and at no time asked for an attorney.

During the trial the appellant testified as follows, in answer to a question on cross-examination by the district attorney: "I was going to tell them what I'm saying here is the truth. I started to. Mr. Bowling said, 'You're lying. You did it.' So he didn't, you know, believe me then. At least I got on my mind I had nothing to tell them until I get me a lawyer."

In answer to a question asked by Mr. Ellery on redirect examination, he testified: "Q. But you didn't say anything to him after that? A. No. I told him in my mind I had nothing to answer him until I got a lawyer."

Appellant's counsel argues that this testimony indicates that appellant actually requested an attorney and that his request was ignored. Respondent, on the other hand, contends that the testimony is evidence of the fact that appellant understood his rights but chose not to exercise them. In our judgment, when taken in its proper context, the disputed statement was not a request for counsel which was communicated to the officers. It was appellant's explanation as to why he did not clarify his inconsistent statements to the officers during the interrogation. In other words, it was his explanation of what was going on in his mind when he was being questioned and was told by Lieutenant Bowling that they didn't believe him. In short, it was a non-vocalized thought which, if believed by the jury, would tend to explain the inconsistent position in which he found himself at the trial. If anything, it indicates that he did understand his rights as contended by respondent. In any event, even if we should assume that he communicated this statement to the officers and was ignored, his testimony would simply conflict with the testimony of Agent Tickvitza, and this conflict was resolved against the appellant by the trial court. (*People* v. *Stafford, supra,* 240 Cal.App.2d 422.)

(2) Defendant's contention that the court erred in refusing to give the jury an instruction on death by accident and misfortune (CALJIC 320) is also without merit.

▌ Jury instructions must be responsive to the issues raised by the evidence. (*People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281]; *People* v. *Mort,* 214 Cal.App.2d 596 [29 Cal.Rptr. 650].) In other words, although a court must instruct a jury on all possible theories, the instructions must be supported by

sufficient evidence. (48 Cal.Jur.2d 479; *People* v. *Temple*, 102 Cal.App.2d 270 [227 P.2d 500].) ▮ Moreover, while the evidence relied upon by the party requesting the instruction need not be of a character to inspire belief, it must be deserving of consideration. (*People* v. *Burns*, 88 Cal.App.2d 867 [200 P.2d 134].)

▮ The proposed instruction should be given when there is substantial evidence that the defendant caused the victim's death by accident or misfortune. The only evidence which could possibly support such an instruction in this case was appellant's own testimony. This testimony, however, if believed by the jury, established the fact that Cruz shot herself. In other words, appellant's testimony does not indicate that he was, as the proposed instruction requires, "the person causing the death." He offered no testimony to indicate that any action on his part caused the weapon to be fired. To the contrary, he testified, "I tried to get it [the gun] but it was too late." Furthermore, even if we assume, as appellant argues, that the evidence may indicate that there was an actual struggle over the gun and that it went off as the result of his action, this evidence is minimal and when considered in the light of all other instructions which were given by the court no substantial error occurred.

(3) Appellant contends that certain evidence of previous suicide attempts by Cruz offered by appellant to show her suicidal disposition was improperly excluded by the trial court. The offered evidence and the court's rulings were substantially as follows:

i. Questions on cross-examination by defense counsel to Cruz's brother concerning Cruz's attempted suicide in late 1964 or early 1965. Objection sustained on the ground that the incident was too remote and inferentially, by reference to prior rulings, that it was irrelevant and immaterial.

ii. Defendant's testimony that when he returned home and admitted visiting with another woman, Cruz reached for a gun and "laid on it." Objection sustained on the ground that the testimony was irrelevant and incompetent and ordered stricken.

iii. Hospital records showing that the victim was treated in the Fresno County Hospital for an apparent attempted suicide 10 months prior to her death. Objection sustained on the grounds of remoteness and relevancy.

iv. Testimony by appellant as to what Cruz stated after the shooting response to his question, "why did you do it?" Ob-

jection sustained on the ground that the testimony was hearsay and not part of the "res-gestae."

v. Testimony of the ambulance driver that Cruz had stated on the way to the hospital, "I shot myself. It was an accident." Testimony allowed but limited to the dying declaration exception to the hearsay rule and the jury was instructed accordingly. (CALJIC 330.)

The first question which must be answered in order to determine whether or not the trial court erred in rejecting defendant's evidence is one of relevancy. In other words, it is obvious that the proffered evidence does not in and of itself establish defendant's innocence and at best is circumstantial evidence of that fact. The main problem which is almost always present in this area is the problem of relevance. To solve this problem we resort primarily to logic, with the basic inquiry being, does the existence of the circumstance tend to prove an essential or probative fact? If it does, the evidence is relevant. If not, it is irrelevant and inadmissible.

According to the appellant, the evidence was offered to show that Cruz was predisposed toward suicide and this in turn tends to prove that she shot herself and that the defendant is innocent. We conclude that this reasoning is logical and amply supported by *People* v. *Tugwell,* 28 Cal.App. 348 [152 P. 740]; 32 Cal.App. 520 [163 P. 508]; and *People* v. *Matlock,* 51 Cal. 2d 682 [366 P.2d 505, 71 A.L.R.2d 605].

In *Tugwell* at page 359, the court reasons as follows: "Manifestly, before a defendant can be found guilty of murder, the fact must first be established that the death in question has been brought about by criminal agency. (Bouvier's Law Dictionary, Rawle's 3d Revision, topic *Corpus Delicti.*) This criminal agency must be shown to be other than the act of the person who has been killed. Statements made by the deceased, indicating an intention to commit suicide, do not come within the rule which would exclude statements made by her concerning past occurrences, such as past quarrels if any there had been between her and the accused. The statements here in question relate to a state of mind of the deceased, which might raise a probability that she was disposed toward self-destruction, and thereby, in connection with the proved circumstances of her death, might suggest a probability that she did kill herself. Our opinion that the testimony should have been admitted is confirmed by the decision of the third district court of appeal, in *People* v. *Wilson,* 14 Cal.App. 518, [112 P. 579], which, as we are advised, is the only California case which bears closely upon the question at issue. There the

court said : 'Where the deceased, with his own hands, administered the poison that caused his death, and the theory of the defense is that the deceased committed suicide, any evidence which tends to support such theory, or that tends to show that it may be true, is admissible. In such case the deceased, as well as the defendant, is, in a certain sense, upon trial, *and evidence of any acts, conduct, or declarations of deceased tending to prove that he may have committed suicide, is relevant and material. (Nordan* v. *State,* 143 Ala. 13 [39 So. 406] ; *People* v. *Gehmele,* Sheldon (N.Y. Sup. Ct.) 251.)' A petition for rehearing of the Wilson case was denied by the supreme court. We think that the rule above stated is applicable here, even without direct evidence that poison was administered to Mrs. Kennedy 'with her own hands.' That evidence of declarations by deceased, indicating that suicide was intended or was in contemplation, may be introduced by the defendant in a case of this kind, is the rule established in Massachusetts by the leading case of *Commonwealth* v. *Trefethen,* 157 Mass. 180 [24 L.R.A. 235, 31 N.E. 961], approved in *Commonwealth* v. *Howard,* 205 Mass. 128, 152 [91 N.E. 397]. (See, also *State* v. *Beeson,* 155 Iowa 355, Ann.Cas. 1914D 1275 [136 N.W. 317].)'' (Italics added.)

In *Matlock,* the court held that it was error not to permit the defendant to introduce evidence that the victim had asked him to kill him. At page 690 the court stated : ''Defendant's obvious mental weakness and the unusual nature of his story make it more, not less, important that he be accorded full opportunity to corroborate that story by any available admissible evidence.''

In support of its position that the court was correct in ruling that Cruz's earlier attempts at suicide were too remote and irrelevant, respondent in essence argues that on the date of the occurrence Cruz was happy, Cruz was singing, Cruz was looking forward to her impending marriage to appellant, Cruz had no inclination to take her own life, and there was no trace of the depression which she evidenced at the time of the alleged prior suicide attempts. Thus, respondent contends, the continuity of any ''stream of consciousness'' had been clearly broken.

Respondent's argument loses sight of the fact that in a murder case it is the victim's inclination or propensity to commit suicide under emotional stress that is relevant and that any competent evidence which logically and reasonably tends to show this is admissible unless objectionable under some

other rule of exclusion. It is true that the trial judge has wide discretion on the question of remoteness, but this discretion is not without limitation. ▮▮▮ In determining whether or not an act or declaration is too remote to have evidentiary value, it is essential to weigh such factors as its nature and signifi-▮▮▮ ▮▮▮ It goes without saying that a suicide attempt by the alleged murder victim as in this case is in and of itself highly significant, and when considered in the light of several similar attempts it has evidentiary value even though it may have occurred many months prior to her death.

Furthermore, respondent's argument does not consider all of the evidence. Respondent properly points out that Cruz was happy at the beginning of the drive. But prior to the shooting, she had been arguing with appellant over ''appellant's other woman in Arizona.'' This argument was similar to the argument which led to the alleged incident testified to by the appellant and stricken by the court, when she ''laid on the gun.'' Carlotta testified that she heard appellant tell Cruz, more than once, first that he would take her with him (to Arizona) so they could get married—then he would say that he would not take her. Cruz, therefore, was not happy shortly before the shooting. In fact, she even threatened to jump from the moving vehicle which indicates emotional instability corresponding with the doctor's diagnosis as set forth in the proffered hospital record. It is, therefore, apparent that the evidence was relevant.

The real objection to such evidence as that under consideration is that it is hearsay. As we have indicated, the evidence was plainly relevant and therefore admissible, unless there is some rule of exclusion applicable to it. With regard to the admissibility of evidence relating to acts indicative of attempted suicide, there appears to be no problem even though under one view at least such non-verbal acts are arguably hearsay, i.e., it requires the assumption that the actor intended to commit suicide and is introduced for the truth of this fact.[1] Such evidence, however, is highly reliable. Thus, in an early case the Supreme Court of the State of Missouri in *State* v. *Ilgenfritz*, 263 Mo. 615 [173 S.W. 1041, 1046, Ann. Cas. 1917C 366], stated that ''All authorities would perhaps agree in saying that any unsuccessful attempt at self-destruction would be admissible as original evidence of . . . suicidal intent.''

[1] (See Witkin, Cal. Evidence (1958) § 214 for discussion of the hearsay rule regarding the admissibility of assertive and nonassertive conduct and authorities cited.)

The admissibility of a suicide declaration or, for that matter, any statement by the alleged victim in a murder case that he took his own life by accident or otherwise, was clearly and unequivocally resolved by this court in the case of *People* v. *Parriera,* 237 Cal.App.2d [46 Cal.Rptr. 835]. In that case Presiding Justice Conley refused to be side-tracked by tenuous argument dealing with well established hearsay exceptions. Relying on *People* v. *Spriggs,* 60 Cal.2d 868 [36 Cal.Rptr. 841, 389 P.2d 377], he approached the problem much in the same manner as the hearsay problem is treated in the new Code of Evidence, and as suggested by Chief Justice Traynor by his enlightened observation in *Spriggs* that ''When hearsay evidence is admitted it is usually because it has a high degree of trustworthiness.'' In *Parriera,* the trial court had limited the testimony of two nurses, that the alleged victim had stated that she had shot herself, to impeachment purposes only; and the court held that it was prejudicial error to do so. At page 283 of the opinion the court stated: ''It must be conceded that in the earlier cases the rule denominating Mrs. Parriera's admissions as inadmissible hearsay would have been blindly enforced. In 19 California Jurisprudence, Second Edition, Evidence, section 411, page 154, they are summarized as follows: 'In criminal prosecutions, the declaration or confession of a person other than the accused that he himself committed the crime is inadmissible in favor of the accused as hearsay, whether the declarant be dead or alive, unless such declaration comes within the res gestae exception to the hearsay rule.'

''However, this general rule has yielded in specific instances to what appears to be common sense consideration of what may be a valid defense in a criminal case. It is a matter of common observation that in instances where there are few eyewitnesses and divergent evidence concerning the commission of a crime, an admission by one of the persons involved that certain things occurred, or were absent, may go to the essence of the question of guilt. For example, if a man is accused of murder, and his defense is that a second person, acting independently, used the pistol in the killing, a statement of this second man to a third party that he in fact did do the shooting, which runs counter to his present evidence, may be decisive, and such evidence should go to the jury for what it is worth.''

For the reasons set forth above, it is our conclusion that appellant was unduly and improperly restricted in his

presentation of evidence relating to the previous suicide attempt of Cruz Almeras. Moreover, it is our conclusion that the trial court improperly restricted the evidentiary value of her statement that she shot herself by admitting it only as a dying declaration, and by instructing the jury to this effect. These errors are sufficiently prejudicial to warrant reversal.

In view of the probability of another trial, we make the following brief comments with reference to the hospital records which were rejected by the court covering the alleged suicide attempt of Cruz Almeras.

■ It is well established, requiring no citation of authority, that a hospital record is admissible into evidence as an exception to the hearsay rule under the Uniform Business Records Act. However, everything that may appear in a hospital record is not admissible in evidence. Only that portion of the record is admissible which states facts which would be admissible had the person who made the record been called as a witness and had been examined in court; that is, only that portion of the record, made by one who could qualify as a perceptive witness to the matter recorded, is admissible. ( *People* v. *Bjornsen,* 79 Cal.App.2d 519 [180 P.2d 443].)

■ We do not pass on all items contained in the proffered hospital record for we have not sifted the record for this purpose. We have observed, however, that the notation that Cruz Almiras had drunk ''peroxide, micrin, hair lightener'' was made by a medical doctor on the hospital staff. We have also observed that the comment that this was an apparent suicide attempt, together with the diagnosis that she was depressed and was an inadequate, insecure dependent person, was made by a psychiatrist. A medical doctor, if called as a witness, could have testified as to the cause of the patient's admission to the hospital. A psychiatrist could have testified as to his diagnosis concerning her state of mind when he examined her, and he could have given his opinion as to her state of mind when she drank the peroxide. It is, therefore, reasonably apparent that these portions of the hospital record were admissible and improperly rejected.

In view of the foregoing, we do not find it necessary to consider the appellant's contention that there is insufficient evidence to justify the verdict of murder in the first degree.

Judgment is reversed.

Conley, P. J., and Stone, J., concurred.