[Crim. No. 12866.   Second Dist., Div. Three.   Dec. 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH
RODRIGUEZ, Defendant and Appellant.

Bruce P. Wolfe for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

MOSS, J.—Defendant, a 17-year-old boy at the time of the killing, appeals from a judgment entered upon a jury verdict finding him guilty of murder in the second degree following a trial which commenced on April 25, 1966. The jury rejected defendant's plea of not guilty by reason of insanity.[1] The principal question presented by this appeal is whether an exculpatory statement made by the defendant shortly after the killing while in police custody and after he had been advised of his rights as required by *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], was inadmissible by reason of the fact that defendant was 17 years old. A second question is whether the court committed reversible error in admitting evidence of defendant's participation in a purse-snatching incident which occurred 30 minutes before the killing.

At about 7:30 p.m. on September 26, 1965, defendant was in an alley. He was staggering and whistling. He leaned against a building and picked up a tree limb approximately 4 feet in length and 3 to 4 inches in circumference. An old man who had just emptied some garbage was returning to his house. Defendant walked toward the old man dragging the club and turned into the yard where the old man had gone. Then the

---

[1]The defense of diminished capacity to achieve the state of mind requisite for the commission of murder was presented at the trial. No question concerning that defense is presented by this appeal.

old man and defendant came out in the alley and started arguing. Defendant lifted up the club with one hand and the old man tried to grab it from him. Defendant knocked the old man in the head and he fell down and hit his head. Defendant leaned over the old man and started hitting him in the head. Then a woman ran screaming out of the yard where the old man and defendant had entered. Defendant grabbed her hand with one hand and held the club in the other. The woman shouted, "Let me go." Defendant let the woman go and she ran back into the yard. Defendant then went back where the old man was lying and started beating him in the head again. He hit him more than three times. Greg Webb, who had witnessed the foregoing events, then hailed some friends of his who were nearby in a car. As they got out of the car they saw defendant running down the alley. He was staggering and yelling, "Get out of my way. I am crazy. Get out of my way. I will kill you." They chased defendant about half a block where one of them knocked the club away from him and the others knocked defendant down. A police officer arrived upon the scene as the scuffle was going on. The tree limb described above was found near defendant covered with the blood of the victim. The victim had a .20 alcohol content in the blood as of the time of his death.

Over defense objection the trial court received in evidence testimony that about one-half hour before the homicide took place, in the same vicinity, defendant and two other boys approached Mrs. Betty Knapp and her two children. One of the other boys grabbed Mrs. Knapp's purse. Mrs. Knapp yelled for help while the boy was wrestling for the purse. Defendant stood about 6 feet away and watched what was happening. In response to Mrs. Knapp's call for help, Mr. Cordero ran out of the house and the three boys departed in different directions. Defendant walked away.

Defendant testified that at about 7 o'clock in the evening (one-half hour before the homicide was committed) he was walking to a bus stop with Jimmy Garcia and a friend of Jimmy. Jimmy grabbed a lady's purse. When the lady yelled, defendant got scared and walked away. He then ran to an alley where he started to urinate between some bushes and a garage. A man grabbed him from behind. The man was yelling at him. Defendant was frightened and picked up a nearby stick and hit the man. Defendant thought the old man was trying to engage in a homosexual act. Because he was dizzy and his head hurt at that point, he did not remember if he hit

the old man again. On cross-examination defendant denied that he had told a different story to the police. Dr. Tweed testified for the defense that in his opinion defendant did not know the nature and quality of his act at the time of the attack and was acting as a result of an acute homosexual panic brought on him by the fear that the victim was molesting him sexually.

In rebuttal, Dr. Abe testified for the prosecution that in his opinion the defendant was sane at the time of the commission of the offense and that defendant was not acting as the result of an acute homosexual panic.

Also on rebuttal, the investigating officer testified that he had interrogated defendant about two hours after the killing in the juvenile detention room of the police station. He knew defendant was 17 years old. The officer testified that before talking to defendant he advised defendant of his constitutional rights, that defendant said he understood his rights and that thereafter defendant talked freely and voluntarily and appeared to be unfrightened.[2] The defense offered no evidence tending to show that defendant did not understand his rights as stated to him or that his statement was not made voluntarily. The officer then advised defendant that he was under arrest for murder. Defendant stated that he had been with Frank Molina and Eddie Garcia, that all three of them were in the alley, that Frank had hit the old man over the head again and again, and that defendant had tried to stop him but could not.

The trial commenced in April 1966, i.e., after the decisions in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado, supra,* 62 Cal.2d 338,

---

[2] The officer testified on direct examination as follows: "Q. Did you inform the defendant of his constitutional rights? A. I did. Q. What did you tell him? A. I told the defendant that he had a right to remain silent, that he had a right to be represented by an attorney at all stages of the proceedings, and that anything he might tell me could be used against him in further court proceedings. Q. Did he then after that talk to you freely and voluntarily? A. He did. Q. Did you ask the defendant whether he understood what you told him? A. I did. Q. What did he say? A. He said he did."

On *voir dire* examination by defense counsel the officer testified as follows: "Q. Officer, did you ask him if he wished to contact an attorney? A. I just stated, as I have just testified, that those were the questions I asked him and the only questions I asked him. Q. Did you tell him that a telephone was available for him to call an attorney? A. I did not. Q. Did you tell him that he could have his parents present? A. I did not. Q. Were his parents present? A. Do you mean in the building or present as I was talking to him? Q. In the room. A. No, they were not. Q. Did you make any effort to have his parents present? A. I did not."

but before the decision in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and, therefore, the rules of *Dorado* rather than the more stringent rules of *Miranda* apply. (*People* v. *Rollins*, 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221].)

Under the *Dorado* rules a finding that the defendant has knowingly and intelligently waived his constitutionally guaranteed rights to counsel and to remain silent may not be made except upon proof that before the interrogation the defendant was informed by the interrogating officer of these rights (or that he otherwise had a conscious knowledge of them). The burden of proof is upon the prosecution to show that the defendant's waiver of his rights to counsel and to remain silent was knowingly and intelligently made. (*People* v. *Hildabrandt*, 244 Cal.App.2d 423, 430 [53 Cal.Rptr. 99]; cf. *People* v. *Davis*, 66 Cal.2d 175, 180 [57 Cal.Rptr. 130, 424 P.2d 682].) In the case of an adult defendant proof that he was advised of his rights, that he said he understood them, and that he thereafter made a statement is sufficient to support a finding of waiver in cases to which *Dorado* applies. (*People* v. *Thomas*, 65 Cal.2d 698, 704-705 [56 Cal. Rptr. 305, 423 P.2d 233]; *People* v. *Saterfield*, 65 Cal.2d 752, 755 [56 Cal.Rptr. 338, 423 P.2d 266].) The finding of waiver may be based upon the testimony of a single officer. (*People* v. *Thomas, supra*.) Although it is good practice for the trial court to make an explicit finding that a defendant waived his constitutional rights, no such finding is required; a finding of waiver may be implied from the fact that the trial court received a defendant's extrajudicial statement in evidence after receiving proof that the defendant had been advised of his rights as required by *Dorado* before the statement was made. (*People* v. *Oats*, 239 Cal.App.2d 261, 265 [48 Cal.Rptr. 579].)

Recently, in *People* v. *Lara*, 67 Cal.2d 365 [62 Cal. Rptr. 586, 432 P.2d 202], the Supreme Court rejected the suggestion that every minor is incompetent as a matter of law to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by an attorney or by a parent or guardian who has himself been advised of such rights. (67 Cal.2d at pp. 378-379.) Therefore, the fact that defendant was interrogated in the absence of his parents or an attorney does not of itself require a finding that defendant did not waive his rights. Under the rule stated in *People* v. *Lara* the admissibility of a voluntary extrajudicial

statement made by a minor in the absence of counsel or other responsible adult "depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement." (67 Cal.2d at p. 383.)

Evidence of "such other circumstances" was not developed in this case. As noted earlier defendant, although he took the stand, did not dispute the testimony of the interrogating officer that defendant said he understood his constitutional rights as explained to him and thereafter spoke freely. These facts distinguish this case from *People* v. *Hildabrandt, supra,* 244 Cal.App.2d 423, in which the interrogating officer merely "assumed" that the defendant understood an admonition as to his rights to counsel and to remain silent, the defendant "steadfastly refused to sign" any statement in writing, and the evidence disclosed his "lack of prior experience in criminal matters."

This case is similar on its facts to *People* v. *Gomez,* 252 Cal.App.2d 844 [60 Cal.Rptr. 881], (hearing denied), in which it was held that two minor defendants effectively waived their rights to counsel and to remain silent after having been advised thereof as required by *Dorado.* The defendants were arrested on charges of robbery, kidnapping for purposes of robbery, and sex perversion after their automobile had been traced through the license number obtained by the victim. One of the officers advised the defendants of their constitutional rights by reading from a card designed for that purpose. The officer then asked the defendants if they understood what he had read and whether they wanted him to repeat it. They said they did not want to be readvised of their rights. Both defendants then made exculpatory statements which created a conflict in the evidence to their detriment. On appeal the defendants conceded that the admonition given before interrogation complied with the *Dorado* requirements (which were applicable to the case) but contended that the record did not reflect that they understood their rights. In holding that the prosecution had made a sufficient prima facie showing that the defendants had knowingly waived their rights the court stated: "Whether a defendant has understood and intelligently waived a right is largely a subjective determination, presenting the trial judge with a difficult task at best, affected, undoubtedly to a degree, by the appearance and demeanor of the witnesses. An objection to evidence sup-

porting this subjective finding, when raised in the trial court, can be explored by additional *voir dire*; on the other hand, when this contention is made for the first time on appeal, the appellate court, restricted to the printed word, is unable to go behind the prima facie sufficiency of the foundational evidence.'' (252 Cal.App.2d at p. 852.)

In this case the interrogation took place only two hours after defendant had beaten a man to death and had warned his captors, ''Get out of my way. I am crazy. Get out of my way. I will kill you.'' We might infer from this evidence that defendant must have been in such a state of emotional turmoil that he did not understand his rights when he spoke to the police. Such an inference was contradicted by the testimony of the interrogating officer that defendant stated that he understood his rights and appeared to be calm and unfrightened when he made his statement. At the time he was called upon to rule on the admissibility of defendant's statement the trial judge had heard and observed defendant on the witness stand. Defendant at no time in the trial denied that he understood his rights. The trial court resolved the conflict in favor of the prosecution. We cannot say from the record before us that the finding of the trial court was, as a matter of law, erroneous.

The evidence of the purse-snatching incident was offered to prove that defendant intended to rob the old man at the time defendant attacked him. The evidence was received over defense objection. The defense did not request the court to instruct the jury that the evidence was received for the sole purpose of showing the intent and motive of the defendant at the time of the killing and no such instruction was given.

Evidence is admissible that tends logically, by reasonable inference, to establish any fact material for the prosecution or to disprove any material fact sought to be proved by the defense even if it reveals the commission of a crime other than that charged. (*People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924].) Evidence is inadmissible which tends to prove criminal disposition and is not relevant to a material issue in the case. (*People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281]; *People* v. *Cook,* 148 Cal. 334, 340 [83 P. 43].)

Defendant's state of mind at the time of the killing was a material issue in the case: the prosecution sought to prove that he killed the victim in the course of a robbery and therefore was guilty of murder in the first degree; defendant sought to prove that he killed in self defense or that he did not have

the requisite intent to commit murder. A legitimate inference from Mrs. Knapp's testimony is that all three boys, including the defendant, intended to rob her. Evidence of the purse-snatching incident was therefore relevant to show that defendant intended to rob the old man when he followed him into his yard and attacked him. The relevancy is strengthened by the fact that the two incidents occurred close together in point of time. (cf. *People* v. *Buice,* 230 Cal.App.2d 324, 341-342 [40 Cal.Rptr. 877].) The evidence was therefore admissible.

Defendant may not complain of the failure of the trial court to give a limiting instruction with respect to the purse snatching evidence because he did not request one and therefore may be supposed to have waived it as unnecessary for his protection. (*People* v. *Miller,* 245 Cal.App.2d 112, 152 [53 Cal.Rptr. 720] ; *People* v. *White,* 50 Cal.2d 428, 430 [325 P.2d 985] ; see *Adkins* v. *Brett,* 184 Cal. 252, 258-259 [193 P. 251].) Furthermore, the failure to give a limiting instruction cannot have resulted in prejudice to defendant since the evidence did little to establish defendant's guilt in comparison to the direct evidence of the killing.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.