[Crim. No. 13296. Second Dist., Div. One. Feb. 5, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. TIMMY CARTER, Defendant and Appellant.

630

Joseph O. Debus, under appointment by the Court of Appeal, Debus & Snyder and Keith Snyder for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin A. Bauer, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury convicted defendant of attempted robbery while armed with a deadly weapon (§§ 211, 664, Pen. Code) and found to be true the allegation of a prior felony conviction. He appeals from the judgment and order denying motion for new trial. The appeal from the order is dismissed.

Around 5 p.m. on May 10, 1966, David Bell, working in his store, saw defendant enter: defendant asked Bell for some eggs. He went to the rear of the store to get the eggs and defendant followed him; Bell told him to go up to the front and he would bring them back to him. When Bell started toward the rear, he looked back and noticed that defendant had his hand in his "bosom," "getting his hand on the gun." Defendant then put his head down and charged at Bell saying, "This is a stickup." Bell saw the gun in defendant's hand; he then pulled his own gun and shot at defendant. The gun had been in a box which Bell carried around with him because twice previously he had been robbed; he testified, "I carried me some protection around since I have been robbed twice." He was "very much" suspicious of defendant. Bell fired twice; defendant fired his gun once. Bell fell behind a showcase and could not determine whether he had hit defendant, but stayed there for a while and when he got up defendant was gone. He saw defendant's gun and ran outside to see if he could find him; he then called the police. He noticed some blood around the store and saw a bullet hole in one wall. Officer Jones responded to the call and recovered defendant's gun from Bell; the gun was loaded but one bullet had been fired.

Around 5 p.m., Sylvia Rucker, a file clerk and receptionist, next door, heard three shots fired; immediately thereafter she

saw defendant walk past the window; he appeared to be leaning a bit to one side.

About three hours later, at 8 p.m., at General Hospital Officer Montez arrested defendant; defendant was lying on the bed with a fresh bullet wound in his right arm.

Defendant testified that he went to Bell's store to buy some cigarettes; he gave Bell a $20 bill and received change for $1; an argument ensued and Bell told him to leave or he would shoot him; Bell then shot twice and he was hit; he went to a friend's home and later to General Hospital for treatment. He denied he brought a gun into the store or attempted to rob Bell.

Officer Traphagen testified that on May 12, 1966, he had a conversation with defendant at General Hospital. Prior to asking him any questions he advised him that ". . . he had a right to remain silent, he had the right to have an attorney present through all proceedings, and if he could not afford an attorney, that one would be provided for him, and that anything he might say we may use against him in future criminal proceedings."

Defendant testified that he recalled having a conversation with Officer Traphagen and at the time he was in pain; he came to California from Louisiana and had never gone to school and could not read or write; the officer told him he was an attorney, and did not advise him of his constitutional rights —the officer did not tell him that he had a right to remain silent, or that anything he said could be used as evidence against him, or that if he did not have the funds for an attorney one would be provided for him. Defendant denied that he told the officer he had an argument with his girl friend and she shot him at her apartment, and did not give the officer an address and apartment number of the place where he was shot. He said that he told the officer he was shot in a store; the officer told him he had his fingerprints on the gun and that he wanted him to confess to the crime, and if he didn't confess, "He'd have somebody shoot me and kill me, something like that."

On rebuttal Officer Traphagen testified that on May 12, 1966, at General Hospital, he first identified himself and Sergeant Lawson as police officers, told him they were investigators handling the case and then advised defendant of his constitutional rights. The officer testified "I advised the defendant that he had a right to remain silent, the right to have an attorney present through all stages of the investigation, that an attorney, if he could not afford an attorney, would be pro-

vided, and that anything he may say could be held against him.'' Then the officer asked defendant if he understood his constitutional rights; ''he stated that he did understand them.'' Defendant made his statements freely and voluntarily. The officer asked defendant if he knew where Bell's Variety Store was; defendant said he did not. Asked how he had been shot, defendant said that his girl friend, Carol Walker, had shot him. The officer asked where the shooting took place and defendant said at the Riviera Apartments. When asked if he had been involved in an attempted robbery at Bell's Variety, defendant said he didn't know where it was. Later the officer checked out the story about Carol Walker and went to the Riviera Apartments and talked to the manager; he could not find a Carol Walker. At no time did he tell defendant he was a lawyer or that he had his fingerprints on a gun or that he was going to kill him or have somebody kill him if he didn't confess. When the officer asked how far he went in school, defendant told him about four years.

. Viewing the evidence in a light most favorable to the judgment, we find ample evidence in the record to warrant the jury's guilty verdict. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266].) The testimony of the eyewitness, David Bell, Mrs. Rucker and Officers Montez, Jones and Traphagen supports defendant's guilt of attempted robbery while armed with a deadly weapon. (*People* v. *Amaya,* 40 Cal.2d 70, 80 [251 P.2d 324]; *People* v. *Imbler,* 57 Cal.2d 711, 715 [21 Cal.Rptr. 568, 371 P.2d 304].)

 Labeling Bell's testimony as inherently improbable amounting to no evidence at all, appellant claims he ''finds it hard to believe, and therefore inherently improbable, that the owner of any business establishment would pick up a box containing a gun, everytime a customer came into his place of business he did not feel could be trusted.'' Factually there is no merit to appellant's contention, for Mr. Bell testified that because he had been robbed twice previously he carried around with him a box containing his gun. Confronted with defendant, of whom he was clearly suspicious, and his conduct there was good reason for Bell to carry ''some protection around'' and have the box with the gun available for ready use for his own protection while defendant was in the store. First, defendant followed Bell to the rear of the store; Bell told him to go up to the front and stay there; when Bell started to walk

to the rear he looked back and noticed that defendant had his hand in his "bosom," "getting his hand on the gun"; and finally defendant charged him saying it was a "stickup." We find nothing unreasonable about Mr. Bell's testimony; obviously his previous experiences had put him on guard and made him more cautious. Legally, Bell's testimony does not fall into the category of "inherently improbable" evidence.

"To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]" (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Lyons*, 47 Cal.2d 311, 320 [303 P.2d 329] *People* v. *Perez*, 65 Cal.2d 709, 713 [56 Cal.Rptr. 312, 423 P.2d 240].) As said in *People* v. *Haydon*, 18 Cal.App. 543, 555-556 [123 P. 1102, 1114]: "A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se*, must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do." (See also *People* v. *Collier*, 111 Cal. App. 215, 226 [295 P. 898]; *People* v. *Nunley*, 194 Cal.App.2d 233, 236 [14 Cal.Rptr. 874]; *People* v. *Guerrero*, 207 Cal.App. 2d 400, 403 [24 Cal.Rptr. 553].)

Without support in the record is appellant's final contention that he was not advised of his constitutional rights under *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P. 2d 361], and *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; "that even assuming the police officer advised [him] of his Constitutional Rights, the terminology used by the police officer would lead [him] to believe that he was only entitled to an attorney at the proceedings in Court"; his educational background "is conclusive on the issue of the lack of ability to understand the advise [sic], if given by the police Officer"; and he thought the police officer was an attorney.

First, defense counsel argued these matters on his objection to Officer Traphagen's testimony concerning defendant's statements. Inherent in the trial court's ruling admitting the statements is the acceptance of Officer Traphagen's testimony that he identified himself and his partner as police officers investigating his case and properly, and in accord with *Dorado* and *Miranda*, advised defendant of his constitutional rights;

634

and its total rejection of defendant's version of the encounter —that the officer represented himself as an attorney, did not advise him of his constitutional rights and threatened to have somebody shoot him if he didn't confess. Also presented to the lower court on the same objection was this issue, "there is a very serious lack of evidence to show that defendant could intelligently waive his right to counsel." Thus, also implicit in the ruling is the finding that defendant knew and understood his constitutional rights and before making any statements to the officer, knowingly and intelligently waived them. The issue of waiver is predominantly a question for the trial court. Its determination will not be disturbed on appeal unless it is "palpably erroneous." (*People* v. *Stafford*, 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598] ; *People* v. *Salcido*, 246 Cal.App.2d 450, 456 [54 Cal.Rptr. 820].) Here the record shows that after the officer advised defendant of his constitutional rights, he asked him if he understood them and defendant answered that he did. This, together with other factors such as his demeanor on the stand, a "certain degree of intelligence . . . above that required for an understanding of the simple rights given" exhibited in defendant's testimony and his background and schooling were considered by the trial judge in determining whether defendant's election to talk to the officer was made with full knowledge and understanding of his constitutional rights. As to his claim of lack of education, the trial judge undoubtedly believed the officer's testimony that defendant told him he had four years of schooling. In addition, there is nothing in the record to establish that defendant did not have sufficient background to understand his constitutional rights or was too confused to understand them. While appellant seeks to create an issue out of the fact that Officer Traphagen first testified that he told defendant "he had a right to have an attorney present through all proceedings" and later testified he told him he had "the right to have an attorney present through all stages of the investigation," arguing that this would lead him to believe that he was entitled to an attorney only at the proceedings in court, we are at a loss to understand how he can claim that he could have been confused on this subject in the light of his testimony under oath that Officer Traphagen never advised him of his constitutional rights. The evidence amply supports the trial court's ruling admitting defendant's statements in evidence.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.