[Crim. No. 14124. Second Dist., Div. One. July 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JONATHAN GRAY, Defendant and Appellant.

Kathleen J. Kirkland, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arthur B. Rosenfeld, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of murder in the second degree.

In an information filed in Los Angeles on January 20, 1967, defendant with Edward Arnold Normant as a codefendant was charged in count I with the attempted robbery of Joe Virgil Long and Nancy Long on December 21, 1966, and in count II with murdering Joe Virgil Long on December 21, 1966. Both defendants were represented by the public defender, a jury trial was waived by each of the parties, and the right to a separate trial also was waived by each of the parties and counsel. Both defendants were found guilty of murder in the second degree. The attempted robbery charge was dismissed. Probation was denied and defendant was sentenced to the state prison. A timely notice of appeal from the judgment was filed.

· A résumé of some of the facts is as follows: Joe Long and his wife Nancy were waiting for a bus at a bus stop at the corner of Venice Boulevard and Hill Street in Los Angeles at about 11:30 p.m. on the night of December 21, 1966. Defendant, Arnold Normant and John Spain walked behind the bench where the Longs were seated and one of the three walking persons above named asked some directions of the Longs.

Mrs. Long answered the question. Mr. and Mrs. Long continued with their conversation when she noticed John Spain approach them with a gun in his hand saying, "Shut up; don't give me any trouble." At this time Long was standing up and Mrs. Long was seated. Spain shoved Mrs. Long and they ended up behind the bench. Long appeared to be attempting to push Spain away as he backed up. Long said, "You are not getting my money," and then three shots were heard. The three persons who were together then ran away. In about 10 minutes an ambulance arrived. Long was dead from a gun shot wound in the chest. Two .22 caliber bullets were found in his body at the autopsy.

Mrs. Long identified defendant and Normant as the two persons who were with Spain. In her opinion, the three persons were together as they were side by side as they readied to cross the street. Long said after the shots, "They got me."

Officer Schmidt of the Los Angeles Police Department at about midnight of December 21, 1966, was in the area of the shooting and saw defendant and Normant being held at gunpoint by a plain clothes officer in the area of 15th and Hill Streets about one block north of the scene of the shooting. Schmidt made a search of the area and apprehended Spain in a telephone booth at the California Hospital. The hospital is about three or four blocks from 15th and Hill Streets.

Margaret Hilf was driving an automobile with Lucy Santellan as a passenger on the night and at the time in question at the intersection of the shooting. Miss Hilf stopped her car for a traffic signal and saw the three persons standing around a bus bench upon which a lady was seated. Miss Hilf next heard the gunshots and saw the flares coming from a gun. She identified a picture of Mr. Long as the man she saw behind the bench and in the line of fire. She saw the three persons then run north on Hill Street. The passenger in the car testified to substantially the same facts.

Officer Nieto of the Los Angeles Police Department was cruising in the area on duty and in plain clothes when he heard the gunshots which appeared to be coming from the area of the intersection where the killing occurred. Officer Nieto saw defendant and Normant running north on Hill Street about 20 feet behind another male Negro who was also running. Nieto captured defendant and Normant and placed them under arrest. After the arrest Nieto heard a woman screaming and when the other police units arrived in about five minutes Nieto was informed of the shooting and charged defendant and Normant with attempted murder. Officer Nieto

searched defendant and Normant and found a box of .22 caliber long rifle ammunition in defendant's pocket. The gun used to kill Long was a .22 caliber revolver.

Officer Johnson of the Los Angeles Police Department was one of the investigating officers and was present at two conversations with defendant. Said statements were freely and voluntarily made after defendant was fully advised of his constitutional rights. Defendant understood the advisement. The defendant told Officer Johnson that his brother-in-law brought a gun home and put it under a bed; that he, defendant, took the gun and some ammunition and drove a car to pick up Spain. Spain and defendant then met with Normant; that they decided after some drinks to get some Christmas money and headed to an area known as "Dog Town," while en route that they saw Mr. and Mrs. Long and one of the three said "Let's get him," that they then parked the car in which they were riding, walked toward the bus stop where Spain said to Long, at the bench: "Sit down; don't give me any trouble." Spain had the gun in his hand, there was a scuffle, Spain pointed the gun at Long and shot him, all three then ran toward their car when he, defendant and Normant were apprehended. Defendant also said to the officers that he understood to "get him" meant to "rob him."

Officer Davenport of the Los Angeles Police Department was also an investigating officer and taked with defendant about 12:30 a.m. on December 22, 1966, with Officer Schwartz. The statements by defendant were freely and voluntarily made after defendant was fully advised of his constitutional rights. Defendant stated that he had gotten the gun earlier in the evening from his brother and then had driven over to pick up Spain and Normant, that he, defendant, was drinking and Spain asked to take the gun and defendant gave it to Spain; that they were driving northbound on Hill Street and saw Mr. and Mrs. Long at the bus stop, that he knew that Spain "wanted to bother these people," that he knew that the Longs might be struck but he did not know that Spain was going to kill Long, that he parked the car and walked with Spain and Normant to the Longs, that Spain had the gun in his hand and told Long not to give them any trouble, that a scuffle ensued, Spain shot Long, they all three then ran northbound on Hill Street, but prior to reaching their car he was apprehended by a plain clothes officer. Officer Davenport identified a document which set forth defendant's constitutional rights and witnessed defendant's signature in three places on the document.

Defendant contended that he had not been advised of all of his constitutional rights, however, after a *voir dire* examination the judge concluded properly that defendant had been fully advised.

Appellant now contends that he did not have a fair and impartial trial, that he was denied his right to counsel at the two interrogations and that the evidence is insufficient to support the judgment. There is no merit to any of such contentions.

Appellant states that he was prejudiced by having a joint trial with Normant under the rule of *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]. The facts of the case at hand and the *Aranda* facts are not similar. Here the court explained at considerable length and detail to appellant and Normant that they could have separate trials, appellants' counsel stated that he had discussed the matter with appellant and that it was his judgment that a joint trial would be in appellants' best interests, the court stated to appellant that he could have a separate trial and appellant in person then waived his right to a separate trial. Obviously appellant cannot be permitted to waive the right to a separate trial, go to trial, be convicted and then argue that it was error to have the joint trial.

The evidence on the *voir dire* hearing with reference to whether appellant was fully advised of his constitutional rights was conflicting. The judge believed the officers and apparently was somewhat influenced by appellant's signatures on the writing to the effect that he had been properly advised. Appellant seems to argue now that he was drunk, hungry and sleepy when the officers talked to him. The evidence is that he had been fed sufficiently, had slept several hours and that he was not under the influence of any intoxicating liquor. Appellant now further states that he could not read when he signed, however, he graduated from the eighth grade and the court found upon sufficient evidence that he could and did read what he had signed. Appellant never complained to the officers about lack of sleep, hunger or his inability to read.

Appellant further complains about some remarks of the judge at the hearing on the request for probation. The judge commented that Normant had been more candid with the officers than had appellant and that appellant had been involved in a burglary of a judge's garage. The information as related was in the probation report and there is nothing

whatsoever to indicate that such matters had anything to do with the trial of appellant.

With reference as to whether appellant was fully advised prior to talking with the officers the court conducted the proceedings properly. Whether appellant understood, whether he waived his rights is predominantly a question of fact. There is no palpable error in this record, the court properly resolved the question of fact in favor of the prosecution. (See *People* v. *Lara*, 67 Cal.2d 365, 390-393 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Carter*, 258 Cal.App.2d 628, 634 [65 Cal.Rptr. 845]; *People* v. *Salcido*, 246 Cal.App.2d 450, 456 [54 Cal. Rptr. 820]; *People* v. *Stafford*, 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Rodriquez*, 256 Cal.App.2d 663, 668-669 [64 Cal.Rptr. 253].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.