[Crim. No. 15274.   Second Dist., Div. One.   Feb. 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FLEETA DRUMGO, Defendant and Appellant.

Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary.

In an information filed in Los Angeles on January 10, 1967, defendant was charged with burglarizing Martin's Radio Center in South Gate on or about December 16, 1966. Defendant pleaded not guilty, a jury trial was waived and it was stipulated that certain testimony taken at the preliminary hearing could be considered by the judge. Other evidence was introduced at the trial. Defendant was found guilty as charged and the court fixed the burglary as being in the first degree. Defendant was referred to the California Youth Authority; however, that Authority after a few months determined that defendant was not capable of reformation under their discipline and on September 5, 1967, the court in lieu of granting a motion for a new trial reduced the offense to burglary in the second degree and sentenced the defendant to the state prison (pursuant to § 1202b, Pen. Code). Ultimately a notice of appeal was filed.

A résumé of some of the facts is as follows: at about 3:15 a.m. of December 16, 1966, Max Roberts, the night watchman at Martin's Radio Center in South Gate, was asleep in his quarters at the rear of the shop. He was awakened by the sound of breaking glass and a crash in the front part of the building. There were floodlights which illuminated the front of the store. While running to the source of the noise, Roberts saw two male Negroes inside the front part of the store, the first of whom was about 12 to 14 feet inside and the second one about 4 to 5 feet inside. The first of the two men was running toward Roberts and Roberts fired his gun at him. The first of two shots must have hit this man for he bent down, turned around and ran out of the store through the front door, the glass in which had been broken.

The second man (the defendant herein), ran from the store when Roberts started to shoot.

The owner of the store, Leslie Huckins, left the store intact about 6:30 p.m. December 15, 1966, and gave no permission for anyone not an employee, to enter. He returned to the store about 4 a.m. December 16, 1966, and found the front door smashed and glass all over the floor. Inside the door on the floor of the store was a milk crate which had not been there when he left the shop the evening before.

A vehicle was chased from the scene of the burglary by uniformed patrol officers. When overtaken the vehicle was occupied by a man who had been shot. He was placed under arrest and the car was impounded. The car was registered to Jeanette Adams of 1032 West 92d Street, Los Angeles. Officers Miller and Taylor at about 6 a.m. on December 16, 1966, went to the Adams apartment. She answered the door and Officer Taylor asked her whether they could come in and question her about the vehicle. She consented and when they entered the apartment the officers saw defendant without a shirt standing over a heater by the bed. Officer Taylor asked defendant who he was and whether he had any identification. Defendant gave his name but stated that he had no identification. Officer Miller noted that defendant had a cut over his left eye which was bleeding. The officers concluded that defendant ''probably was the other man involved in our burglary.'' Officer Taylor told defendant he was under arrest and defendant answered ''I know it.''

Defendant was advised of his then constitutional rights and he stated that he understood his rights. Defendant was not drunk and appeared to talk and walk normally, and to be of average intelligence. Neither officer observed anything unusual about him other than the cut and the bleeding.

Defendant was then driven in the police car back toward the burglarized store and Officer Taylor asked defendant if he would show them where the store was and where the get-away car had been parked and defendant stated that he would. As the officers approached the store defendant said, ''That's the store over there. . . . If you'll turn the car into the alley, I'll show you where our car was parked.'' Defendant stated that ''the car was parked in there; that they had then walked down the alley out to the street, . . . that they had a milk crate; that Baby had thrown the milk crate through the window, and that they had both entered the TV store.'' When defendant was asked how he had gotten the cut over his

left eye, he said that he must have gotten it when he went through the broken glass door of the store.

Later at the police station at about 11 a.m. defendant stated that he and his partner had intended to steal two portable television sets and then to sell them.

■ .Appellant now asserts that the arrest was illegal in that it was without probable cause and was performed without a warrant, that his statements were improperly received into evidence, that the judge was in error in concluding from the evidence that defendant had intelligently waived his constitutional rights against self-incrimination and that the evidence was insufficient to support the judgment. There is no merit to appellant's assertions.

At the trial appellant made a motion to strike the testimony of Officer Miller upon the sole ground that appellant had not made an intelligent waiver. At no time was there made any other legal issue relevant to the testimony of Officer Miller. Specifically there was no claim made in the trial court that the arrest was illegal or that the statements of appellant should not be admitted because they might be the product of any alleged illegal arrest.

■ If a defendant does not object to the offered evidence upon a specific ground or otherwise raise the issue in the trial court ordinarily he will be precluded from raising that as an issue for the first time on the appeal. (See *People* v. *Flores,* 68 Cal.2d 563, 567-568 [68 Cal.Rptr. 161, 440 P.2d 233] ; *People* v. *Talley,* 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564] ; *People* v. *Hyde,* 51 Cal.2d 152, 157 [331 P.2d 42] ; *People* v. *Richardson,* 51 Cal.2d 445, 447-448 [334 P.2d 573].) In other words, defendants in criminal trials are not to be permitted to withhold making objections at trial and later, upon an appeal have a built-in, self-imposed claim of error. The dangers of any such practice are perfectly evident.

■ The court in this case observed the witness (appellant), heard him testify, heard and saw the officers testify with reference to whether appellant made an intelligent waiver of his privileges and rights. It is a question of fact and the judge is the person under the circumstances in this case to ascertain the credibility of the witnesses. Upon substantial evidence the court found that appellant had willingly, voluntarily and intelligently waived his rights. (See *People* v. *Samaniego,* 263 Cal.App.2d 804, 809-810 [69 Cal.Rptr. 904] ; *People* v. *Carter,* 258 Cal.App.2d 628, 634 [65 Cal. Rptr. 845].)

The appellant described to the officers in rather complete detail how he and his associate had burglarized the store in accordance with their plans. These admissions coupled with the evidence of the watchman and the owner of the store amply support the judgment. (See *People* v. *Cobb,* 45 Cal.2d 158, 161 [287 P.2d 752]; *People* v. *Rupp,* 41 Cal.2d 371, 377-378 [260 P.2d 1]; *People* v. *Cullen,* 37 Cal.2d 614, 624-625 [234 P.2d 1].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.