[Crim. No. 14133. Second Dist., Div. One. July 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAMIRO A. SAMANIEGO, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant and one Brand were charged with two counts of burglary (§ 459, Pen. Code) and grand theft (§ 487, subd. 3, Pen. Code); defendant was charged with unlawful use of force and violence on a peace officer (§ 242, Pen. Code); and Brand was charged with receiving stolen property (§ 496, Pen. Code). Brand pleaded guilty to the last count and the disposition of the others against him was continued. The court sitting without a jury found defendant guilty on all four counts and the burglaries to be in the second degree. Motion for a new trial on count IV (use of force against a police officer) was denied but on the court's own motion the crime was reduced to battery. Defendant appeals from the judgment and from the order denying his motion for a new trial. The appeal from the order is dismissed.

Around 1:30 or 2 a.m. on January 17, 1967,[1] William Basch, an owner of Tyler & Basch Company, a dress factory, was called by police to the premises; he found the front window broken, pieces of paper, dresses on broken hangers and broken glass scattered around and the place burglarized; missing were several dress costumes, bottles of bourbon and other liquors, a brief case containing papers, a checkbook with checks, and Standard Oil, Shell Oil and Texaco Oil credit cards, a Skil saw identified by a piece of tape on the cord and three cutting instruments kept on Rosemary Conyer's work table.

Otis Smith, Standard Oil Station gas attendant, testified that during the evening of February 15, 1967, a man in a Mercury, license No. HBW 709, drove in; the man was nervous and in a hurry, kept saying, ''Fill it up with gas'' and gave him a Standard Oil credit card signing the invoice ''Pete Lopez.'' About two months later Officer Vonk contacted Smith and showed him three or four sets of photographs from which he identified defendant as the man; Smith remembered him because he had been in such a hurry; he also identified defendant at the trial. Mr. Basch identified the Standard Oil credit card as one of those stolen from Tyler & Basch.

---

[1] A discrepancy relative to the date exists in the evidence which shows that on February 15 defendant used the stolen Standard Oil credit card, and on February 16 after defendant was arrested the stolen credit cards were found in his possession. In the light of their character and the nature of the rest of the evidence, these discrepancies were properly reconciled by the trier of fact. (*People* v. *Carr,* 170 Cal.App.2d 181, 188 [338 P.2d 479].)

On February 15, 1967, in response to a radio call regarding car strippers on 28th Street, Officer Platzer and his partner went to the location where they observed a white Ford Fairlane parked at the sidewalk and a blue Mercury parked ten feet ahead of it; they saw a man leave the Ford and walk toward the door of the Mercury; the trunk and right front door of the Mercury were open; Officer Platzer's partner ran after the man; Officer Platzer saw another man leave the right front door of the Ford and run westbound on 28th Street, and chased him but lost sight of him; the street lights were on and as he came within 15 feet of him, saw his head and shoulders and the rear portion of his body but not his facial features. Defendant matched the officer's general description of the man, including his approximate height and weight. By the time Officer Platzer returned to the cars his partner had arrested the other man, Brand, for auto theft and checked the Ford; he advised him that the Ford had been stolen. Standing outside the rear of the Mercury, Officer Platzer saw inside the open trunk hubcaps, battery, voltage regulator, radio, spare tire and jack; all of these items were missing from the Ford. Standing outside the open right front door of the Mercury, Officer Platzer saw through the open door on the rear seat red floormats, carpeting, broken portions of a metal dashboard and radio bracket; these items were also missing from the Ford, and the portions of the dash exactly fitted the broken-out portion of the Ford car. He then located the registration for the Mercury behind the sun visor which showed the registered owner to be Ramiro Samaniego; the license number was IZU 736; the keys were in the ignition and the car was impounded. Officer Vonk took the keys of the Mercury and tried them in the ignition, doors and trunk of the Ford; the keys fit.

Around 8:30 a.m. on February 13, 1967, John Harris, manager, Montebello Ford, entered the premises and found the keys to the cars on the lot which were kept on a ring in the office scattered on a sofa and a '64 Ford Fairlane, license No. HBW 079, missing; one of the chains across the lot's driveway was broken as if a car had been driven through it. He identified the keys taken from the ignition of the Mercury as being similar or identical to the ones found in the Ford; he testified that a person would have to have about 80 keys for the ignition and 80 keys for the trunk to be able to walk down the street, see a Ford Fairlane, enter it and drive it away.

When he recovered the Ford it had been stripped—the license plates were missing, one side was dented and various articles had been removed from the vehicle; he identified the articles Officer Platzer had observed in the Mercury automobile on February 15 as being identical to those missing from the Ford. A battery and voltage regulator were missing from the storage room of Montebello Ford; the strike plate of the door had been sheared off. Two batteries and two voltage regulators were among the articles observed in the Mercury.

On February 16, 1967.[2] while Officer Vonk was booking Brand at the station, defendant came in with Brand's wife to visit him; defendant asked for the keys to Brand's vehicle; the officer received Brand's permission but Brand told him his car, a 1953 green Nash, was in San Diego. Officer Vonk went to the lot with defendant to check the keys; he observed that the Nash had no license plates or other means of identification and defendant did not produce the red tag issued by the D.M.V. during the interim when license plates are absent from a car; defendant looked in the glove compartment of the car he had driven to the station and advised the officer he could not find any identification; Officer Vonk asked defendant if he had a driver's license and he said he did not; he asked defendant's name and he stated, "What?"; he said, "Aren't you Samaniego?", defendant said, "Who's Samaniego?", at which time he broke out in a sweat and his breathing was heavy; the officer said. "You know who Samaniego is, the one last night with Brand on the stolen car"; then defendant. using his elbow, struck Officer Vonk a blow in the chest and started to run; Officer Vonk grabbed him, they went to the ground and engaged in a wrestling match until three officers assisted in placing defendant's hands behind him and handcuffing him; in addition to the chest blow which hurt the officer he received abrasions on the nose and various gouges and scratches.

After defendant was placed in custody and advised that he was under arrest for grand theft. Officer Vonk searched him; in his front shirt pocket he found a small address book containing the credit cards stolen from Tyler & Basch. In the Nash on the front seat was the attaché case taken from Tyler

[2]There also appears to be a discrepancy regarding the date of arrest; the battery of Officer Vonk is alleged to have occurred on February 17 but he testified that it occurred immediately prior to defendant's arrest on February 16; these discrepancies too were properly reconciled by the trial judge.

& Basch; it contained the three cutting tools (identified by Rosemary Conyer) and check blanks, miscellaneous diagrams and drawings, and articles belonging to defendant. On the rear seat was the Skil saw. Officer Vonk advised defendant of his constitutional rights, then asked him if he understood them; defendant replied that he did. Defendant said the attaché case and contents belonged to him; when asked about the Skil saw defendant said it was his.[3]

Defendant testified he and Mrs. Brand went to the station on February 16, 1967; he also visited Brand and when he left, the officer said, ''What is your name?'' and he gave him his true name; the officer asked for his I.D. and he said he had it (a temporary license and other identification in an envelope with his tax return form) out in the car; they went to the parking lot and the officer asked him if he wasn't with Brand the night before and he said no, he was not; the officer said, ''Yes, you was. You was the man that we was looking for . . . You better come with me, we're looking for you . . . You and Brand stole a car. You know all about this. We found some stolen parts in your car''; the officer tried to grab him and he wondered why; they fell to the ground and soon five officers came and handcuffed him and took him inside. He knew Brand for some time and on February 15 ''on a Wednesday afternoon, in the evening'' he loaned his Mercury to him; he was at his girl friend's house on the evening of February 15 and tried to reach Brand, then the next morning learned he was in custody; he had given Brand his key ring which contained the keys to the Mercury; he never recovered the car, although his brother did. He denied burglarizing Tyler & Basch, using any of the credit cards particularly the Standard Oil card, going into a Standard station and using that or any other card, going into the Montebello Ford building and taking any keys or any automobile from the lot, and telling anyone that the Skil saw found in the Nash belonged to him. He first saw the attaché case when Officer Vonk took it from the Nash; he denied any knowledge of the presence of the drawings and diagrams and that his tax returns were in the case; however, he admitted that Officer Vonk returned these papers to his mother.

---

[3] ''A. [By Officer Vonk]: At the time of arrest I asked the defendant if he had any property in the Nash that he wanted taken out since he was under arrest, and that the Nash was going to be stored. He stated, yes, that the attaché case was his and the contents inside of it. I asked him about the Skil saw which was in the rear seat. He stated, yes, it was his.''

■ Appellant's first claim of error is that, while he was properly advised of his constitutional rights, asked if he understood them and answered that he did, he did not effectively waive his right to remain silent because Officer Vonk did not expressly say, ''Having heard these rights, do you now waive them, and would you speak to me,'' thus, the statements that the attaché case and contents and Skil saw belonged to him were inadmissible. For such claim appellant cites no authority, and in the trial court admitted he knew of no court decision in support thereof.

Defendant was properly advised of his constitutional rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and effectively waived the same. ■ ''Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.'' (*Miranda* v. *Arizona,* 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974].) ■ There is nothing in *Miranda* or any other case that requires a police officer to ask a defendant if he ''expressly waives'' his constitutional rights; and the record herein supports all that is required for a proper waiver—that defendant ''voluntarily, knowingly and intelligently'' waived them. Officer Vonk testified, ''I advised him he was placed under arrest for Grand Theft, and there were several charges, Grand Theft, Burglary, Possession of Dangerous Drugs. After this I advised him he had the right to remain silent, make no statements, that if he waived his right and made any statements, anything he stated would be used against him; that he had the right to an attorney at all times; that if he could not afford an attorney, one would be appointed free of charge. I then asked him if he understood these rights. He stated he did.''; and that everything defendant subsequently stated to him was said freely and voluntarily. Defendant's statements concerning his ownership of the attaché case and the Skil saw were properly admitted in evidence.

■ Appellant contends that the evidence pertaining to the items found in the Mercury should have been stricken because the officer unlawfully searched the vehicle; that he was not arrested until some time later at the police station

and the fact that they arrested Brand at the location did not give them any legal basis to search the Mercury.

The articles taken from the stolen Ford and observed in defendant's Mercury were not discovered as the result of any search. The trunk and the right front door of the Mercury were open when the officers arrived; the Mercury was parked 10 feet ahead of the Ford; exposed to Officer Platzer's view in the open trunk of the Mercury were items missing from the Ford, and exposed to his view on the rear seat through the open right front door of the Mercury were other items taken from the Ford. No one opened the Mercury to view the stolen articles therein; the officer's testimony establishes that they were in plain sight. Thus they were not discovered as the result of a search. (*People* v. *Lamberson,* 235 Cal.App.2d 856, 859 [45 Cal.Rptr. 563] ; *People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381] ; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) When Officer Platzer returned to where the cars were parked, his partner told him that he had learned that the Ford had been stolen and that he had arrested Brand, and upon viewing the Ford and observing the articles missing from the Ford inside of the Mercury, he was warranted in entering the Mercury to check the registration, taking the keys and impounding the vehicle. (*People* v. *Demes,* 220 Cal.App.2d 423, 437-438 [33 Cal.Rptr. 986] ; *People* v. *Green,* 235 Cal.App.2d 506, 511-516 [45 Cal.Rptr. 371].)

While the stolen parts of the Ford were not discovered through a search of the Mercury, we discuss probable cause as an issue raised by appellant relative to the "search" of the vehicle and removal of the contents. Probable cause is clearly established by the evidence. The officers went to 28th Street in response to a radio call regarding car strippers at that location. The information contained in that call was corroborated by the officers' immediate observation of a Mercury parked 10 feet in front of a Ford, the open trunk and right front door of the Mercury, Brand's exit from the Ford and movement toward the open door of the Mercury and defendant's conduct in leaving the right front door of the Ford and fleeing the scene on foot; ascertainment that the Ford had been stolen and that' therefrom various items had been removed; and observation through the open trunk and door of the Mercury of the stolen Ford parts. This constituted sufficient probable cause to arrest Brand and his companion later identified as defendant. (§ 836, Pen. Code; *People* v. *Hillery,* 65

Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People v. Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116]; *People v. Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) Inasmuch as it was readily apparent to the officers that the Mercury containing the stolen Ford parts had been employed in their theft, entry of the Mercury unquestionably was incident to Brand's arrest. (*People v. Harris,* 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225]; *People v. Green,* 235 Cal.App.2d 506, 513-515 [45 Cal.Rptr. 371].) In the light of the totality of the circumstances, the fact that the entry of the Mercury preceded defendant's arrest because of his absence from the scene through flight does not render it and the removal of the stolen items therein illegal. (*People v. Williams,* 67 Cal.2d 226, 229-230 [60 Cal.Rptr. 472, 430 P.2d 30].)

Finally, to support his claim that the evidence is insufficient as a matter of law to convict him of burglary, appellant argues that the only real tangible evidence linking him with the taking of the Ford keys and Ford car were the two keys that fit the stolen Ford found by the officers in his Mercury, which is answered by the "uncontradicted" evidence that he lent his Mercury to Brand and the "very poor" description of him given by Officer Platzer.

There is here no contention that the burglary of the Montebello Ford agency and the theft of the Ford vehicle from the agency's lot did not occur, thus the only issue raised by appellant is the identity of the perpetrator of the crimes. This was a question for the trier of fact. (*People v. Hildreth,* 202 Cal.App.2d 468, 472 [21 Cal.Rptr. 5]; *People v. Taylor,* 4 Cal.App.2d 214, 218 [40 P.2d 870].) The claimed weakness of identification testimony is a matter of argument for the trial judge and cannot be effectively argued on appeal. (*People v. Williams,* 53 Cal.2d 299, 303 [1 Cal.Rptr. 321, 347 P.2d 665]); and unless the evidence of identity can be construed as inherently improbable or incredible as a matter of law, the finding of the trier will not be disturbed. (*People v. McNeal,* 123 Cal.App.2d 222, 224 [266 P.2d 529]; *People v. Hornes,* 168 Cal.App.2d 314, 319 [335 P.2d 756]; *People v. Bookhammer,* 223 Cal.App.2d 278, 280 [35 Cal.Rptr. 779].; *People v. Martinez,* 206 Cal.App.2d 809, 812 [23 Cal.Rptr. 897].) The prosecution, of course, may rely on circumstantial evidence to connect the defendant with the commission of the crime charged and to establish beyond a reasonable doubt that he was the perpetrator thereof. (*People v. Hillery,*

62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Huizenga,* 34 Cal.2d 669, 675 [213 P.2d 710].)

 The keys identified by the manager of Montebello Ford as belonging to the Ford were found in defendant's Mercury. The following evidence clearly disputes defendant's alibi that he loaned his Mercury to Brand in the "afternoon, in. the evening" of February 15 and never recovered it. Smith, the Standard Oil attendant twice positively identified defendant—from photographs and in the courtroom—as the man who came into his station in a Mercury during the early part of the evening of February 15; on the credit invoice, Smith recorded the Mercury license number as HBW 709, the same number ascribed to the stolen Ford;[4] the manager of Montebello Ford testified that when the stolen Ford was recovered its license plates were missing; the police found the license plates on defendant's Mercury. That, according to defendant's testimony, he and Brand were friends and he drove to the police station on February 16 in Brand's car are circumstances which could have been considered by the trier of fact in determining that he was Brand's partner the night before (*People* v. *Goodall,* 104 Cal.App.2d 242, 248 [231 P.2d 119]); and corroborative is Officer Platzer's identification of defendant as Brand's partner on the night of February 15, based on his conclusion that defendant matched the description of the man who fled the scene including the approximate height and weight. Further, the Tyler & Basch Standard Oil credit card was found in defendant's shirt pocket when he was arrested and the stolen attaché case, which he then claimed was his, contained cards as well as some of his own personal papers.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 2, 1968.

---

[4]According to the manager of Montebello Ford, the license number of the Ford was HBW 079; this is but another discrepancy or perhaps typographical error in the record. It is too slight to merit any serious consideration in the light of the other similarities.