[Crim. No. 13567. Second Dist., Div. One. Aug. 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. McKINLEY STEWART, Defendant and Appellant.

810

Oliver W. Holmes, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant with one Black was charged with burglary (§ 459, Pen. Code) and it was alleged that he suffered a prior felony conviction (entering without breaking) for which he served a term in the state prison. The cause was submitted to the trial court on the transcript of the testimony taken at the preliminary hearing and upon further testimony of three witnesses. Defendant was found guilty of second degree burglary; no disposition was made as to the prior felony conviction. He appeals from the judgment and order denying motion for new trial. The appeal from the order is dismissed.

Around 10:30 a.m. on Saturday, November 19, 1966, Mr. Haddad, owner of a laundromat at 4161 South Figueroa, found that six coin boxes had been broken into and by force removed from the premises and approximately $90 representing $15 from each box had been taken. The laundromat is open to the public from 6:30 a.m. to 1:30 a.m. Around 11:30 a.m. Officer Szabo learned of the theft in a police broadcast and was given a description of the car and the suspects; an hour later he observed a dark 1957 Ford station wagon, license No. TEK 392, with three Negro occupants, one of whom was defendant. Both car and passengers matched the description, although the license number varied by one letter, "K" in place of "X." The vehicle was less than a mile from, and proceeding toward the laundromat. The officer made a U-turn and followed the vehicle; as he approached within 50 feet of it he observed the passenger in the right front seat bend over out of his sight and defendant, seated in the rear seat of the vehicle on the right side, bend over in the same manner and disappear from his line of vision. The officer then turned on the red light and stopped the vehicle. Officer Szabo made a cursory pat-down search of the three occupants, then searched the vehicle and found a bayonet under the right front seat and a brown paper bag containing a large number of quarters behind the right passenger seat at defendant's feet. At that time he advised defendant of his constitutional rights[1] and informed him of the charge on which he was arrested; he also asked defendant if he understood those rights and "he said he understood." It appeared that

---

[1] "I advised the defendant that he had the right to remain silent, and anything that he said could be used against him in a court of law. I told him that he had a right to the presence of an attorney, and if he couldn't afford an attorney, one would be appointed for him prior to any questioning."

defendant had been drinking but the officer testified that he was not under the influence, that he spoke freely and voluntarily. After he was advised of his constitutional rights, defendant protested the arrest of his companions, insisting that he had committed the burglary alone; he said he stood on top of the washing machines and pulled the coin boxes off with his hands without using a bayonet or hammer and offered to go back to the laundromat and give a trial demonstration if the officer did not believe him. He said there were several people in the building at the time.

Around 12:30 p.m. on Monday, November 21, 1966, defendant was again advised of his constitutional rights,[2] this time by Officer Matthys at the jail; asked if he understood those rights, defendant responded that he did. After being questioned defendant freely and voluntarily took the officer to 41st and Flower Streets where he pointed out the general location of one of the coin boxes. (At the preliminary hearing Haddad identified the coin box by matching his key to the lock.) On the following day, Tuesday, November 22, 1966, after the investigation of his two companions was completed, defendant was arraigned.

 Conceding that the officers had the right to detain his vehicle and the occupants for investigation (*People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]), appellant contends that at the time it was searched there was no probable cause for arrest without the evidence obtained in the search of the vehicle, such search being valid only if incidental to a lawful arrest.

An arrest may be made without a warrant whenever a police officer has reasonable cause to believe that the person to be arrested has committed a felony (§ 836, subd. 3, Pen. Code). There is no exact formula for the determination of reasonableness and each case must be decided on its own facts and circumstances and on the total atmosphere of the case. (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) "Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer*, 49

---

[2] "I told him that he had a right to remain silent, and that anything he said could be used against him in a Court of law; that he had a right to have an attorney present during all of the proceedings; and if he could not afford an attorney, we would make an application to the Public Defender's office to see about getting him an attorney."

Cal.2d 442, 446 [317 P.2d 967].)'' (*People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Stewart;* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97] ; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].)

■ The trial court determined that the facts and circumstances facing the police officer at the time of the arrest were sufficient to constitute reasonable cause therefor; we will not disturb the trial court's finding. The record shows that at the time Officer Szabo arrested defendant he had, exclusive of the results of the prior incidental search of the vehicle, knowledge of facts sufficient to constitute probable cause for his arrest. Earlier in the day a theft of the laundromat had occurred and an hour before the arrest Officer Szabo was advised by radio broadcast of the theft, together with a description of the vehicle, a dark 1957 Ford station wagon bearing license number TEX 392 in which were the suspects described as three male Negroes. Less than a mile from the laundromat and proceeding in its general direction, a dark 1957 Ford station wagon bearing license number TEK 392, in which were three male Negroes, was observed by the officer; the single variance from the broadcast description related to the last letter in the license number. When the officer turned around and followed the vehicle he saw the passenger in the front seat and defendant seated in the rear right seat lean forward out of his line of vision. The officer's information concerning the theft, the vehicle used therein and the suspects, his subsequent observations and the furtive conduct of the passengers were sufficient to and did give the officer reasonable cause to believe that defendant had committed the theft—a felony. Thus, the search of the vehicle, which produced the weapons and quarters, immediately prior to defendant's arrest was lawful; ''if before making a search and seizure officers are justified in making an arrest it is immaterial that the search and seizure preceded rather than followed the arrest. (E.g., *People* v. *Torres, supra* (1961) 56 Cal.2d 864, 866; *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294 [294 P.2d 36] ; *People* v. *Simon* (1955) 45 Cal.2d 645, 648-649 [290 P.2d 531].)'' (*People* v. *Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Boyles,* 45 Cal. 2d 652, 655 [290 P.2d 535].)

■ A further ground for reversal urged by appellant is that he was illegally detained by the police in that he was

arrested on November 19, 1966, and not arraigned until November 22, 1966, constituting a violation of section 825, Penal Code,[3] and that had he been brought before a magistrate on November 21, 1966, he would not on that day have taken the officers to the place where one of the coin boxes was hidden.

"The section [825, Pen. Code] excludes legal holidays in the calculation of the period of time within which a defendant must be taken before a magistrate (*People* v. *Hightower,* 189 Cal.App.2d 309, 312 [11 Cal.Rptr. 198]) ; and Saturdays are holidays in the municipal court under Government Code, section 72305. (*People* v. *Mitchell,* 209 Cal.App.2d 312, 320 [26 Cal.Rptr. 89].)" (*People* v. *Ross,* 236 Cal.App.2d 364, 368 [46 Cal.Rptr. 41].) Thus, excluding Saturday and Sunday from the computation the two days would have expired on November 23, 1966. Defendant was arrested on Saturday at 12:30 a.m., November 19, 1966, and arraigned on the morning of November 22, 1966, within the required two-day period. "In any event no prejudice to defendant is pointed out by the delay in his arraignment, and '[a] violation of a defendant's right to be taken before a magistrate within the time specified by the law does not require a reversal unless he shows that through such wrongful conduct he was deprived of a fair trial or otherwise suffered prejudice as a result thereof.' (*People* v. *Combes, ante,* pp. 135, 142 [14 Cal.Rptr. 4, 363 P.2d 4].)" (*People* v. *Lane,* 56 Cal.2d 773, 781 [16 Cal.Rptr. 801, 366 P.2d 57].)

As to the self-incriminating act of taking the officers to the place where a coin box was hidden, even had the time expired at the end of that day (November 21, 1966), where a voluntary admission is made prior to the expiration of the time allowed within which to bring defendant before a magistrate, any subsequent delay has no bearing on the admission. (*People* v. *Shapiro,* 180 Cal.App.2d 714, 722 [4 Cal.Rptr. 788].) Moreover, it is apparent from defendant's prior complete confession made immediately after his arrest that the act of taking the officers to the location of the coin box was merely cumulative. (*People* v. *Jacobson,* 63 Cal.2d 319, 331 [46 Cal. Rptr. 515, 405 P.2d 555].)

---

[3] "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; provided, however, that when the two days prescribed herein expire at a time when the court in which the magistrate is sitting is not in session, such time shall be extended to include the duration of the next regular court session on the judicial day immediately following."

■ Appellant's last contention that he was not properly advised of his right to counsel before being questioned at the police station is without merit. On two separate occasions proper warning was given by different officers—the first, advised, among other things, "that he had the right to the presence of an attorney, and if he couldn't afford an attorney, one would be appointed for him prior to any questioning," the second, "that he had a right to have an attorney present during all of the proceedings; and if he could not afford an attorney, we would make an application to the Public Defender's office to see about getting him an attorney." Both warnings comply with the requirements of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and specifically with the requirement that the officer must "warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." (384 U.S. at p. 473 [16 L.Ed.2d at p. 723].) ■ Then before defendant made any statements or did any incriminating act he was asked if he understood those rights and on each occasion he responded that he did. After prior warnings the issue at the subsequent interrogation is whether the defendant "was then sufficiently aware of his constitutional rights to be deemed to have knowingly and intelligently waived them." (*People* v. *Hill*, 66 Cal.2d 536, 554 [58 Cal.Rptr. 340, 426 P.2d 908].) We are satisfied that the record demonstrates that defendant twice was offered counsel but intelligently and understandingly rejected the offer. The record confirms the sufficiency of the first warning and the free and voluntary nature of the full confession made by defendant immediately after his arrest after being warned of his constitutional rights and advising the officer that he understood the same. The incriminating act of taking the officers to where the coin box was hidden was done the second day after he made his confession and after a second warning, which was adequate to remind defendant of his constitutional rights.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.