[Crim. No. 17265. Second Dist., Div. Four. July 31, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY JAMES COOPER, Defendant and Appellant.

COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William R. Pounders, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

DUNN, J.—In the early morning hours of September 9, 1966, appellant Cooper, David Thomason and a third young man identified only as "Chuck"

were creating a disturbance in the Thriftimart grocery store in Eagle Rock. They were loud and boisterous, and were asked to leave. They did so, but returned an hour and a half later. During this interval, they went to the home of appellant's stepsister. There, they decided to return to the store to pick a fight with the people who had "thrown them out," and to use knives if necessary. Appellant initiated the conversation, but all three agreed to the plan.

After they returned to the store, they stepped on and off the mat outside one of the entrances, causing the automatic door to open and close repeatedly. Upon observing this Mr. Kleidosty, the manager, and Ronald Snowball, a clerk, went outside to investigate. They found Thomason and "Chuck" standing on the mat, and saw appellant coming around a corner of the store. Appellant asked Kleidosty and Snowball if they "were looking for trouble." They replied they were not. After further conversation appellant hit Snowball in the face with his fist, whereupon Kleidosty went to the door of the store to summon help from the employees inside. When he turned around, he saw the scuffle had proceeded farther out into the parking lot in front of the store. Snowball had pinned "Chuck" to the ground, and appellant and Thomason were running away. When they had gone 10 or 15 feet, they returned to help "Chuck." At this time, appellant was holding a switchblade knife with the blade exposed. Kleidosty saw the blade flash beneath the light in the parking lot, which was illuminated by 10 or 15 light standards. Visibility was good. From 15-20 feet away, he saw appellant hit Snowball several times with the hand which was holding the knife. He was using a punching motion to the front midsection of Snowball's body. (As a result of a stab wound received, Snowball was hospitalized and his spleen removed.)

Following this assault appellant Cooper, Thomason and "Chuck" ran from the parking lot. Kleidosty tried unsuccessfully to apprehend them, and then returned to Snowball. He discovered a box-cutter in the pocket of Snowball's apron, but the blade was closed. It was found he had been stabbed in the left portion of the midsection. Kleidosty did not actually see the stabbing, but concluded that the punching movements by appellant corresponded with the wounding of Snowball, as he had not seen a knife in the hands of either Thomason or "Chuck."

On September 11th appellant went to Missouri. Later that month two Los Angeles police officers traveled there to take him into custody on a charge of assault with a deadly weapon. He waived extradition and was brought back to Los Angeles.

By information filed October 18, 1966 appellant was formally charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)). A jury convicted him, but judgment was reversed because the trial court prejudicially omitted to instruct, *sua sponte,* on the lesser offense of simple assault.[1] Upon retrial, the jury again found appellant guilty of assault with a deadly weapon. Probation was denied; he was sentenced to state prison and now appeals.

His appeal raises the following contentions: (1) the court erred in failing to instruct that the testimony of an accomplice ought to be viewed with distrust; (2) it was error to instruct the jury that appellant had a constitutional right not to testify; and (3) it was error to admit appellant's extrajudicial statements to the police officers.

### I. *Was The Court Required To Instruct That The Testimony Of An Accomplice Ought To Be Viewed With Distrust?*

As a prosecution witness, David Thomason testified that after he, appellant and "Chuck" left the store for the second time, appellant stated that he had "stabbed the guy." Appellant contends that because he, Thomason and "Chuck" agreed to return to the store, pick a fight with the employees and use knives, Thomason was an accomplice to the crime and the court therefore erred in failing to instruct that the testimony of an accomplice ought to be viewed with distrust. Appellant did not request such an instruction, or any instruction relating to accomplices,[2] although this was the second time the case had been tried.

Where the evidence is sufficient to warrant the conclusion by a jury that a witness implicating the defendant was an accomplice, it is the duty of the trial court to give instructions regarding accomplices and their testimony, whether or not the defendant has requested such instructions. (*People v. Davis* (1954) 43 Cal.2d 661, 673-674 [276 P.2d 801]; *People v. Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367]; *People v. Warren* (1940) 16 Cal.2d 103, 118-119 [104 P.2d 1024]; *People v. Wade* (1959) 169 Cal. App.2d 554, 557 [337 P.2d 502].) An accomplice is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen. Code, § 1111.)

Whether Thomason was an accomplice within the meaning of section 1111 depends upon whether he conspired to procure commission

---

[1] *People v. Cooper* (1968) 268 Cal.App.2d 34 [73 Cal.Rptr. 608].

[2] At the People's request, the jury was given the definitions of "aid and abet" and of "principals" in a crime.

of the crime charged (Pen. Code, § 182), or aided and abetted in its commission (Pen. Code, § 31). (*People* v. *Davis, supra,* 43 Cal.2d at p. 672.)

In addition to the agreement to return to the store and use knives, the record shows: on the occasion of their second appearance at the store, Thomason and appellant ran back together to help "Chuck," who was pinned to the ground by Snowball; both of them attempted to pull Snowball away from "Chuck," and in this attempt Thomason kicked Snowball in the head before he was stabbed. Hence, there was sufficient evidence to warrant a conclusion by the jury that Thomason was an accomplice. It follows that the trial court erred in failing to instruct, *sua sponte,* upon the law of accomplices, including an instruction that if the jury found Thomason to be an accomplice his testimony should be viewed with distrust.[3]

However, not every failure so to instruct is reversible error. (*People* v. *Koenig* (1946) 29 Cal.2d 87, 94 [173 P.2d 1].) The question for an appellate court to determine is whether, considering the entire record, the error prejudiced the defendant's rights. (Cal. Const. art. VI, § 13; *People* v. *Hamilton* (1948) 33 Cal.2d 45, 51 [198 P.2d 873].) Here, the testimony of Kleidosty and Snowball, eyewitnesses to the crime, constituted substantial evidence to support the judgment. Furthermore, as will be seen, appellant admitted to an officer that he had stabbed Snowball. He fled from the state. All of this was in addition to the testimony of Thomason. The failure of the trial court to instruct the jury regarding accomplices and their testimony, thus was not such error as to warrant reversal of the judgment. (*People* v. *Wade, supra,* 169 Cal.App.2d at p. 557; *People* v. *Robinson* (1952) 110 Cal.App.2d 415, 418 [242 P.2d 676]; *People* v. *Burton* (1949) 91 Cal.App.2d 695, 712 [205 P.2d 1065].) Put another way, it is not reasonably probable that a result more favorable to appellant would have been reached, absent the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 834-838 [299 P.2d 243].)

[3]Code of Civil Procdure, section 2061, provided: "The jury . . . are . . . to be instructed by the Court on all proper occasions: . . . . 4. That the testimony of an accomplice ought to be viewed with distrust . . . ." Section 2061 was repealed by Statutes, 1965, chapter 299, section 127, page 1366, effective January 1, 1967. Hence, it was inoperative at the time of appellant's second trial in April 1969. However, in the Law Revision Commission Comment (1965) it was pointed out that all of the instructions listed in section 2061 were derived from the common law, and that the courts did not rely on that statute as a definitive list of cautionary instructions which may or must be given on appropriate occasions. The repeal of the section was not intended to have any effect on the giving of the instructions contained therein and permitted or required to be given by decisional law. (See, *e.g., People* v. *Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367] as to the necessity for instructions regarding accomplices.) We consider that an instruction in the language of Code of Civil Procedure, section 2061, subdivision 4, should have been given in the instant case notwithstanding the repeal of that statute prior to trial.

## II. *Was It Error To Instruct The Jury That Appellant Had A Constitutional Right Not To Testify?*

At the prosecution's request the jury was instructed: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way." (CALJIC No. 51, Re-revised, now CALJIC No. 2.60 [3d rev. ed., 1970].) The record does not indicate that appellant objected to this instruction. He contends it was error to give the instruction because he did not join in the prosecution's request therefor.

In support of this contention, appellant cites *People* v. *Molano* (1967) 253 Cal.App.2d 841 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328], an opinion by this division. It was there held error to give the instruction over the express objection of the defendant because doing so was tantamount to making a comment on his silence, as forbidden by *Griffin* v. *California*.[4] *People* v. *Brown* (1967) 253 Cal.App.2d 820 [61 Cal.Rptr. 368] is a decision by Division Five of this court and was filed one day before *Molano*. There, a modified form of the instruction had been given.[5] The defendant did not object. That court held it was not error to give the instruction, stating that the rationale of *Griffin* was inapplicable (p. 830): "The thrust of the *Griffin* decision was to prevent [the silence of the defendant] from becoming part of the proof in the prosecution's case. This is what the given instruction sought to prevent." It thus appears that the two decisions, if not flatly contradictory, do adopt a different *ratio decidendi*.

Considerable divergence is reflected in subsequent decisions considering the propriety of the instruction. In *People* v. *Mason* (1968) 259 Cal.App.2d 30 [66 Cal.Rptr. 601], this division again considered the problem. The instruction was given at the request of the prosecution without objection by defendant. We concluded it was immaterial whether defendant expressly or impliedly objected, and thus found a conflict between *Molano* and *Brown,* but declined to resolve that conflict, holding the error in giving the instruction was not prejudicial since the evidence for the prosecution was complete and persuasive. In *People* v. *Hernandez* (1968) 264 Cal. App.2d 206 [70 Cal.Rptr. 330], as in *Mason,* the instruction was given at the request of the prosecution, and the record disclosed no objection by defendant. The court held it was immaterial whether defendant objected,

---

[4](1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

[5]For the purpose of this discussion, the modification is immaterial.

expressly or impliedly, and criticized *Molano*. It refused to extend the holding in *Griffin* to preclude the giving of the instruction, but concluded, if it was error to give the instruction, the error had not resulted in a miscarriage of justice.

In *People* v. *Brady* (1969) 275 Cal.App.2d 984 [80 Cal.Rptr. 418] (Fourth Dist., Div. Two), the instruction was given at the prosecution's request. The court rejected defendant's contention that the instruction was violative of the *Griffin* rule, and squarely held it was proper to give the instruction (275 Cal.App.2d at p. 992): "[3] The purpose of the *Griffin* rule is to prevent the accused's exercise of his constitutional privilege against self-incrimination from being judicially emphasized as affirmative evidence against him. [Citation.] [1c] The instruction involved herein does not state that the defendant's silence may be construed as an indication of guilt. It is patently obvious to the jury when the accused fails to take the stand, and the instruction admonishes the jurors that the defendant is exercising his constitutional right in not testifying, and that his failure to testify is not to be considered in determining his innocence or guilt. The instruction in its present form (CALJIC 51 [Re-rev.]) is not violative of *Griffin* and constitutes an accurate affirmation of the accused's constitutional right against self-incrimination. [4] We hold that it is not necessary for the trial court to give the instruction *sua sponte* but, if given by the court of its own volition, or at the request of the prosecution or the defendant, with or without objection, the instruction is proper."

Still later, Division One of the First District decided *People* v. *Ham* (1970) 7 Cal.App.3d 768 [86 Cal.Rptr. 906], holding it was not error for the trial court to fail to give the instruction *sua sponte,* going on to say (p. 778): "We are impressed by the rationale in *Horrigan* to the effect that the giving of such instruction *sua sponte* points up to the jury the absence of a prime witness from the stand and that to focus upon this situation 'is a constitutionally proportioned invasion of and a violation of the rights of defendant.' " This statement appears to bring the decision into conflict with the reasoning of *Brady*.

In the case at bench, we decline the temptation again to be heard. Our Supreme Court in *People* v. *Gardner* (1969) 71 Cal.2d 843, 852-854 [79 Cal.Rptr. 743, 457 P.2d 575], discussed some of the conflicts but found it unnecessary to resolve them because of the circumstances there present, saying (pp. 853-854): "*Horrigan* reasoned that the instruction contains

many of the vices condemned in *Griffin* v. *California, supra,* 380 U.S. 609, including the evil of pointing up to the jury the defendant's failure to testify. However, the instruction also seeks to prevent the evil condemned by *Griffin* in that it expressly forbids the jury from drawing an inference of guilt from the defendant's failure to testify. Whether or not it is to the defendant's advantage to have the instruction given manifestly is debatable. In any event it is not necessary for the jury's understanding of the case and thus the court did not err in failing to give it on the court's own motion."

We hold, in the light of the evidence received in the case at bench, that the giving of the instruction, if error at all, was harmless beyond any reasonable doubt.

### III.   *Was It Error To Admit Appellant's Extrajudicial Statement To The Police Officers?*

At a *voir dire* examination conducted outside the presence of the jury, the following evidence was received: when officers Duretto and Colella took appellant into custody at the jail in Kennett, Missouri, each of the officers, as well as the local sheriff, gave appellant the warning required by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; he was asked whether he understood his constitutional rights and he stated that he did; he was then put into an automobile and driven by the officers from Kennett to Memphis, Tennessee, there to board an airplane for Los Angeles; during the first 15 or 20 minutes of the drive, Officer Duretto asked appellant whether he remembered a fight at Thriftimart in Eagle Rock in which a person was cut with a knife; to this appellant replied: "Yes, I cut him, but only when he came at me with a razor, one of those that looked like you open boxes with."

At the conclusion of the examination, the court determined the statement had not been obtained in violation of appellant's *Miranda* rights and was admissible into the evidence. Thereafter Officer Duretto repeated the statement, in testimony before the jury.

Appellant contends it was error to admit the statement into evidence because: (1) the offer to furnish counsel made in the course of the *Miranda* warning was not bona fide; (2) the warning was not repeated immediately before the officer's question which prompted appellant's statement; and (3) there was no corroboration regarding the giving of the warning and appellant's having made the statement.

As part of the *Miranda* warnings, appellant was advised, by both Officer Duretto and Officer Colella, that he had the right to have an attorney present during questioning and, if he so desired and could not afford an attorney, one would be provided for him free of charge prior to any ques-

tioning. This was an adequate offer of counsel as spelled out in *Miranda* (384 U.S. at p. 479 [16 L.Ed.2d at p. 726]). Nevertheless, appellant contends the offer was not *bona fide* because the officers could not have furnished an attorney during the automobile trip. There is no merit in this contention. In *Miranda,* the Supreme Court made the following comment concerning the right to counsel (384 U.S. at pp. 473-474 [16 L.Ed.2d at p. 723]): "Once warnings have been given, the subsequent procedure is clear . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

■ Thus, the issue is not whether the police can produce an attorney, but whether the defendant asks for one. If he does, there can be no questioning until an attorney is provided. It is up to the defendant, however, to exercise his right to counsel. Unless he does, the problem of the availability of counsel does not arise. ■ Had appellant told the officers during the automobile trip that he wanted an attorney, they would have been obliged to cease further interrogation. Since he did not, it is of no significance that an attorney was not immediately available.

■ Appellant next contends that both his rights to counsel and to remain silent were violated because he was not readvised of those rights immediately preceding the questioning in the automobile. As previously indicated, he was given appropriate *Miranda* warnings on three separate occasions before leaving the jail in Kennett for the drive to Memphis. He was asked whether he understood the rights enumerated in the warning, and replied that he did. Only 15 to 20 minutes after the start of the automobile trip, Officer Duretto asked appellant the question which prompted his statement. This statement appeared to the officer to have been made freely and voluntarily.

■ There is no requirement that the admonition relate to a particular question, or to a particular segment or interval of the interrogation. (*People* v. *Perrin* (1967) 247 Cal.App.2d 838, 843 [55 Cal.Rptr. 847].) After prior warnings, the issue as to ensuing interrogations is whether the defendant was then sufficiently aware of his constitutional rights to be deemed to have knowingly and intelligently waived them. (*People* v. *Hill* (1967) 66 Cal.2d 536, 554 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Stewart* (1968) 264 Cal.App.2d 809, 815 [70 Cal.Rptr. 873].) ■ There is nothing in *Miranda,* or any other case of which we are aware, requiring a

police officer to ask a defendant if he "expressly waives" his constitutional rights. (*People* v. *Shaw* (1968) 267 Cal.App.2d 679, 682 [73 Cal.Rptr. 499]; *People* v. *Samaniego* (1968) 263 Cal.App.2d 804, 810 [69 Cal.Rptr. 904].) "Once the defendant has been informed of his rights, and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them." (*People* v. *Johnson* (1969) 70 Cal.2d 541, 558 [75 Cal.Rptr. 401, 450 P.2d 865].) ▮▮▮ Appellant stated he understood his rights; he did not request an attorney; he freely and voluntarily made a statement which actually went beyond the scope of the officer's question. Nothing occurred between the time of the warnings and appellant's statement, including the running of the time involved, which can be construed to have affected his understanding of his rights. We are satisfied by the record that appellant knowingly and intelligently waived his right to counsel and his privilege against self-incrimination.

▮▮▮ Appellant's final contention is that his statement was inadmissible because there was no corroboration of the officers' testimony that the warning was given and that appellant made the statement. ▮▮▮ In *Miranda*, the Supreme Court pointed out that the state has the burden of demonstrating that the defendant knowingly and intelligently waived his right to counsel and his privilege against self-incrimination. The court then observed (384 U.S. at p. 475 [16 L.Ed.2d at p. 724]): "Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." We do not take this comment to mean that an extrajudicial statement of a defendant is inadmissible unless the prosecution produces corroboration of a police officer's testimony regarding an interrogation. To read such a requirement into *Miranda* would mean that the police are not to be believed, absent corroborating evidence, and that such evidence must be furnished by recording the interrogation proceedings or by having present an observer who is not in the employ of the police department. We do not believe *Miranda* may be so interpreted.

▮▮▮▮ At the *voir dire* examination, appellant testified he was not given a *Miranda* warning and that he did not make any statement to the officers. This testimony simply created a conflict with the testimony of Officers Duretto and Colella, and was for the trial court to resolve. The court obviously resolved it in favor of the officers. This determination may not be disturbed on appeal unless palpably erroneous. (*People* v. *Salcido* (1966) 246 Cal.App.2d 450, 454 [54 Cal.Rptr. 820]; *People* v. *Stafford* (1966) 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598].) Each of the officers

testified that he gave appellant a *Miranda* warning, and recited the contents thereof. When appellant made the statement, both officers were present and heard it. On the basis of this showing, we cannot conclude the trial court was incorrect in its determination.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1970.